IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:17-CV-630-D

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) **ORDER** |
| STEPHEN C. PETERS, VISIONQUEST WEALTH MANAGEMENT, LLC, VISIONQUEST CAPITAL, LLC, and VQ WEALTH, LLC, | ) ) ) ) ) ) |
| Defendants. | ) |

On December 20, 2017, the Securities and Exchange Commission ("plaintiff" or "SEC" or "Commission") filed a complaint against Stephen Condon Peters ("Peters"), VisionQuest Wealth Management, LLC ("VQ Management"), VisionQuest Capital, LLC ("VQ Capital"), and VQ Wealth, LLC ("VQ Wealth"; collectively, "defendants"), alleging violations of Section 17(a) of the Securities Act of 1933 ("Securities Act"), Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder, and Sections 206(1) and (2) of the Investment Advisers Act of 1940 ("Advisers Act") [D.E. 1]. On June 25, 2020, the SEC moved for summary judgment and filed a memorandum and documents in support [D.E. 36]. On July 20, 2020, defendants responded [D.E. 37].[1] On July 27, 2020, the SEC replied [D.E. 38]. As explained below, the court grants the SEC's motion for summary judgment.

---

[1] Defendants do not oppose plaintiff's motion for summary judgment to the extent plaintiff's motion is based on collateral estoppel. See [D.E. 37]. In their response, defendants clarify that (1) because plaintiff is not seeking civil penalties against Peters, relief in this action is limited to injunctive relief and disgorgement, and (2) plaintiff's motion is "based entirely and exclusively on the preclusive effect of the jury verdict in [] Peters's criminal case." Id. at 1–2. The SEC does not contest these limitations. See [D.E. 38].

I.

The court accepts as true the allegations of the SEC's complaint for purposes of the SEC's motion for summary judgment. The court also has considered the entire record, including the sworn testimony at Peters's criminal trial.

Peters controlled VQ Capital, VQ Management, and VQ Wealth (collectively, the "VQ Entities"). See Compl. [D.E. 1] ¶ 24. At all relevant times, Peters was an investment adviser representative of VQ Management and held Series 7, 63, and 65 licenses. See id. Before forming VQ Management in 2005, Peters was associated with another registered broker-dealer from August 2000 through November 2004. See id.

In 2005, Peters formed VQ Management, a Raleigh-based, North Carolina limited liability company. See id. ¶ 25. Beginning in March 2016, VQ Management was registered with the Commission as an investment adviser. See id. Before March 2016, VQ Management was registered as an investment adviser with the State of North Carolina and several other states. See id. On July 12, 2017, the FBI executed a search warrant at VQ Management, along with the other VQ Entities, and at Peter's residence. Once the FBI searched these places and seized records, the VQ Entities effectively ceased operations. See id.

In 2008, Peters also formed VQ Capital, a Raleigh-based, North Carolina limited liability company, purportedly to (i) make investments in income-producing businesses and real estate, and (ii) provide financial consulting services to business owners. See id. ¶ 26. VQ Capital purportedly conducted business through its own employees and through employees of VQ Management who also provided services for VQ Capital. See id.

In 2008, Peters also formed VQ Wealth, a Raleigh-based, North Carolina limited liability company. See id. ¶ 27. According to filings made with the North Carolina Department of Secretary of State and Peters's investigative testimony, VQ Wealth was the sole member of VQ Management and VQ Capital. See id. Peters and his spouse, Amy Peters, owned a majority interest in VQ

2

Wealth. See id. VQ Wealth never registered with the Commission in any capacity. See id.

Between at least April 2012 and June 30, 2017 (the "Relevant Period"), Peters, acting individually or through VQ Capital or VQ Management, fraudulently offered and sold approximately $10.1 million in promissory notes to at least 60 investors, the majority of whom were advisory clients of VQ Management. See id. ¶¶ 3–4. Many were elderly and unsophisticated. See id. ¶ 4. VQ Capital issued the notes which typically had five-year terms, and purported to pay annual interest of eight percent if paid quarterly, or nine percent if the noteholder elected to receive a lump-sum payment of principal and interest at the end of the term. See id. ¶ 3.

Although Peters varied what he told prospective investors to convince them to invest in VQ Capital notes, he repeated certain common claims to many note purchasers. See id. ¶ 5. For example, Peters told numerous investors that VQ Capital would invest the offering proceeds in revenue-producing businesses, and that he and VQ Capital would be paid from the spread between the greater return that VQ Capital would earn on the investments and the lesser return that VQ Capital was obligated to pay the noteholders. See id. Similarly, Peters represented to some prospective investors that neither he nor the VQ Entities would receive compensation from the note offering proceeds. See id. ¶ 6. To the majority of investors, Peters represented that the VQ Capital notes presented little or no risk of loss. See id. ¶ 7. Peters also told some investors that the notes were "guaranteed." See id. Peters's representations were false. See id. ¶ 8.

Although Peters used some investor proceeds on what could be construed generously as business activities, he diverted at least two-thirds of the money for his own benefit or to pay interest to, or redeem, earlier investors. See id. ¶ 9. During the Relevant Period, Peters spent at least $4.4 million to support an opulent lifestyle, including purchasing and remodeling a large horse farm in North Carolina, purchasing fine art for his home, and building and furnishing a large vacation home in Costa Rica. See id. ¶ 10.

3

As part of Peters's scheme, Peters routed the fraudulently obtained funds from VQ Capital through VQ Wealth and then to his own use. Peters spent at least another $4.9 million making interest and principal payments to earlier investors. See id. ¶ 11. Peters never disclosed to note purchasers that he would pay a substantial percentage of the note proceeds to himself or that he would use investor proceeds for interest payments or redemptions. See id. ¶ 13. Peters also failed to disclose to note purchasers that of the approximately one-third of the funds spent on business activities, Peters used much to pay the ongoing operating expenses of his existing businesses, rather than to invest in new businesses. See id. ¶ 14. Moreover, the notes were not guaranteed and presented substantial risk. See id. ¶ 15.

On December 20, 2017, a federal grand jury in the Eastern District of North Carolina indicted Peters. See Indictment, United States v. Stephen Condon Peters, No. 5:17-CR-411-D (E.D.N.C. Dec. 20, 2017) [D.E. 1]. On October 18, 2018, the grand jury issued a superseding indictment. See Superseding Indictment, Peters, No. 5:17-CR-411 (E.D.N.C. Oct. 18, 2018) [D.E. 57]. Count one charged Peters with violating Sections 206(1) and (2) of the Advisers Act. See id. at 1–22. Count two charged Peters with violating Sections 17(a)(1)–(3) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5. See id. at 23–24. The court presided at Peters's criminal trial in May and June 2019. The jury convicted Peters of all 20 counts, including counts one and two. See Verdict, Peters, No. 5:17-CR-411 (E.D.N.C. June 6, 2019) [D.E. 99]. Peters committed these crimes while an investment adviser who owned and operated the VQ Entities. On September 13, 2019, the court sentenced Peters to a total of 480 months' imprisonment. See Judgment, Peters, No. 5:17-CR-411 (E.D.N.C. Sept. 13, 2019) [D.E. 157]. Peters is currently incarcerated in Petersburg, Virginia, and is appealing his conviction and sentence.

II.

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment

4

as a matter of law. See Fed. R. Civ. P. 56(a); Scott v. Harris, 550 U.S. 372, 378 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, see Anderson, 477 U.S. at 248, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. See Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Harris, 550 U.S. at 378.

A genuine issue of material fact exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. See Anderson, 477 U.S. at 249. "The mere existence of a scintilla of evidence in support of plaintiff's position [is] insufficient...." Id. at 252; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Only factual disputes that affect the outcome under substantive law properly preclude summary judgment. See Anderson, 477 U.S. at 248; Hux v. City of Newport News, 451 F.3d 311, 315 (4th Cir. 2006).

The doctrine of "collateral estoppel" or "issue preclusion" is a subset of the res judicata genre. In re Microsoft Corp. Antitrust Litig., 355 F.3d 322, 326 (4th Cir. 2004). "Applying collateral estoppel forecloses the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate." Id. (alteration and quotation omitted); see Sedlack v. Braswell Servs. Grp., Inc., 134 F.3d 219, 224 (4th Cir. 1998). To

5

apply collateral estoppel or issue preclusion to an issue or fact, the proponent must demonstrate:

> (1) the issue or fact is identical to the one previously litigated; (2) the issue or fact was actually resolved in the prior proceeding; (3) the issue or fact was critical and necessary to the judgment in the prior proceeding; (4) the judgment in the prior proceeding is final and valid; and (5) the party to be foreclosed by the prior resolution of the issue or fact had a full and fair opportunity to litigate the issue or fact in the prior proceeding.

In re Microsoft Corp., 355 F.3d at 326; see E. Assoc. Coal Co. v. Dir., Off. of Worker's Comp. Progams, 578 F. App'x 165, 173 (4th Cir. 2014) (per curiam) (unpublished); Polk v. Montgomery Cnty., 782 F.2d 1196, 1201 (4th Cir. 1986); Tuttle v. Arlington Cnty. Sch. Bd., 195 F.3d 698, 703–04 n.6 (4th Cir. 1999); C.B. Marchant Co. v. E. Foods, Inc., 756 F.2d 317, 319 (4th Cir. 1985). Six exceptions allow a court to apply collateral estoppel to non-parties to a litigation: (1) the non-party agreed to be bound by the litigation of others; (2) a substantive legal relationship existed between the person to be bound and a party to the judgment; (3) the non-party was adequately represented by someone who was a party to the earlier suit; (4) the non-party assumed control over the litigation in which the judgment was issued; (5) a party attempts to relitigate issues through a proxy; or (6) a statutory scheme forecloses successive litigation by non-litigants. See Taylor v. Sturgell, 553 U.S. 880, 893–95 (2008); CentraArchy Rest. Mgmt. Co. v. Angelo, 806 F. App'x 176, 178–79 (4th Cir. 2020) (per curiam) (unpublished); Duckett v. Fuller, 819 F.3d 740, 745 (4th Cir. 2016); Baloco v. Drummand Co., 767 F.3d 1229, 1249–50 (11th Cir. 2014).

A "prior criminal conviction may work an estoppel in favor of the Government in a subsequent civil proceeding." Emich Motors Corp. v. Gen. Motors Corp., 340 U.S. 558, 568 (1951); see United States v. Jean-Baptiste, 395 F.3d 1190, 1194 (11th Cir. 2005); United States v. Beaty, 245 F.3d 617, 624 (6th Cir. 2001); Glantz v. United States, 837 F.2d 23, 25 (1st Cir. 1988); United States v. Heggins, 240 F. Supp. 3d 399, 404 (W.D.N.C. 2017); S.E.C. v. Resnick, 604 F. Supp. 2d 773, 779 n.5 (D. Md. 2009). "In the case of a criminal conviction based on a jury verdict of guilty, issues which were essential to the verdict must be regarded as having been determined by the judgment."

6

Emich Motors Corp., 340 U.S. at 569; see Kennedy v. Mendoza-Martinez, 372 U.S. 144, 157 (1963); Jean-Baptiste, 395 F.3d at 1194–95; Beaty, 245 F.3d at 624; Howard v. I.N.S., 930 F.2d 432, 434 (5th Cir. 1991) (per curiam); S.E.C. v. Chapman, 826 F. Supp. 2d 847, 854 (D. Md. 2011). A pending appeal in the criminal case does not bar applying collateral estoppel. See, e.g., Huron Holding Corp. v. Lincoln Mine Operating Co., 312 U.S. 183, 188-89 (1941); Resnick, 604 F. Supp. 2d at 779 n.5.

A.

The SEC alleges in counts one, two, and three of its complaint that Peters, VQ Management, and VQ Capital, aided and abetted by VQ Wealth, violated Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5. See Compl. [D.E. 1] ¶¶ 75–85. Section 17(a) of the Securities Act provides:

> (a) It shall be unlawful for any person in the offer or sale of any securities . . . by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—
>
> (1) to employ any device, scheme, or artifice to defraud, or
>
> (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or
>
> (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q(a).

Rule 10(b) provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

. . .

> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the

7

> Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b).

> Rule 10b-5 provides:
>
> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> > (a) To employ any device, scheme, or artifice to defraud,
> >
> > (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
> >
> > (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

Courts apply identical tests for determining liability under Section 17(a), Section 10(b), and Rule 10b-5. See Aaron v. S.E.C., 446 U.S. 680, 701–02 (1980); S.E.C. v. Frohling, 851 F.3d 132, 136 (2d Cir. 2016); S.E.C. v. Morgan Keegan & Co., 678 F.3d 1233, 1244 (11th Cir. 2012) (per curiam); S.E.C. v. Gotchey, 981 F.2d 1251, 1992 WL 385284, at *1 (4th Cir. Dec. 28, 1992) (per curiam) (unpublished table decision); S.E.C. v. Staples, 55 F. Supp. 3d 831, 837 (D.S.C. 2014); S.E.C. v. Haligiannis, 470 F. Supp. 2d 373, 381 (S.D.N.Y. 2007). The SEC can prove that a defendant violated Section 17(a)(1), Section 10(b), and Rule 10b-5 by establishing that the defendant "(1) made a false statement or omission (2) of material fact (3) with scienter (4) in connection with the purchase or sale of securities." S.E.C. v. Pirate Inv. LLC, 580 F.3d 233, 239 (4th Cir. 2009) (quotation omitted); see Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc., 552 U.S. 148, 157 (2008); Amalgamated Bank, as Tr. for LongView Collective Inv. Funds v. Maximus, Inc., 771 F. App'x 238, 239 (4th Cir. 2019) (per curiam) (unpublished); Morgan Keegan & Co., 678 F.3d at 1244; McConville v. S.E.C., 465 F.3d 780, 786 (7th Cir. 2006); S.E.C. v. Woolf, 835 F. Supp. 2d

8

111, 118 (E.D. Va. 2011).² Similarly, the SEC can prove violations of Sections 17(a)(2) and (3) by establishing that the defendant (1) made a false statement or omission (2) of material fact (3) negligently (4) in connection with the purchase or sale of securities. See Morgan Keegan & Co., 678 F.3d at 1244; S.E.C. v. Shanahan, 646 F.3d 536, 541 (8th Cir. 2011); Staples, 55 F. Supp. 3d at 837–38.

The SEC argues that Peters's criminal conviction estops defendants from relitigating the issues and facts necessary to decide counts one, two, and three. See [D.E. 36-1] 14–16. Although the VQ Entities were non-parties to Peters's criminal proceedings, they are liable for Peters's violations under the principle of respondeat superior. See Morgan Keegan & Co., 678 F.3d at 1249; Rosenthal & Co. v. Commodity Futures Trading Comm'n, 802 F.2d 963, 966–67 (7th Cir. 1986); Commerford v. Olson, 794 F.2d 1319, 1322–23 (8th Cir. 1986) (collecting cases); Paul F. Newton & Co. v. Tex. Com. Bank, 630 F.2d 1111, 1118 (5th Cir. 1980); Carras v. Burns, 516 F.2d 251, 259 (4th Cir. 1975). Additionally, the VQ Entities are estopped from relitigating facts or issues decided by Peters's criminal conviction because Peters adequately represented the VQ Entities at trial. Taylor, 553 U.S. at 893–95; Angelo, 806 F. App'x at 178–79; Duckett, 819 F.3d at 745; Baloco, 767 F.3d at 1249–50.

On June 6, 2019, a jury convicted Peters on count two of the indictment which charged violations of Sections 17(a)(1)–(3) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5. See Verdict at 1, Peters, No. 5:17-CR-411 (E.D.N.C. June 6, 2019) [D.E. 99]; Superseding Indictment at 23–24, Peters, No. 5:17-CR-411 (E.D.N.C. Oct. 18, 2018) [D.E. 57]. In reaching its verdict, the jury determined that Peters knowingly, both directly and through the employees and agents of VQ Management and VQ Capital, made material false statements and

---

² Unlike private litigants, the SEC is not required to prove the additional elements of reliance or loss causation. See Morgan Keegan & Co., 678 F.3d at 1244; Pirate Inv. LLC, 580 F.3d at 239 n.10; S.E.C. v. Rana Rsch., Inc., 8 F.3d 1358, 1364 (9th Cir. 1993); S.E.C. v. Blavin, 760 F.2d 706, 711 (6th Cir. 1985) (per curiam).

9

omissions to VQ Management investment adviser clients in connection with the sale of the VQ Capital Notes. See Jury Instr. at 35–39, Peters, No. 5:17-CR-411 (E.D.N.C. June 7, 2019) [D.E. 107]. The factual determinations essential to the jury's verdict on count two in Peters's criminal case replicate those required for the SEC to prevail on counts one, two, and three of its complaint in this action. Compare id. with [D.E. 1] and Pirate Inv. LLC, 580 F.3d at 239. Defendants concede that Peters's criminal conviction for count two forecloses defendants from relitigating the facts necessary to decide counts one, two, and three in this case. See [D.E. 37] 1–2; Mendoza-Martinez, 372 U.S. at 157; Emich Motors Corp., 340 U.S. at 569; Jean-Baptiste, 395 F.3d at 1194; Beaty, 245 F.3d at 624; Howard, 930 F.2d at 434; Chapman, 826 F. Supp. 2d at 854. Thus, no genuine issue of material fact exists and the SEC is entitled to judgment as a matter of law against defendants on counts one, two, and three. Accordingly, the court grants plaintiff's motion for summary judgment on counts one, two, and three.

B.

The SEC alleges in count four of the complaint that VQ Management and Peters violated sections 206(1) and (2) of the Advisers Act. Section 206 provides:

> It shall be unlawful for any investment adviser by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly—
>
>> (1) to employ any device, scheme, or artifice to defraud any client or prospective client;
>>
>> (2) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client;
>
> . . . .

15 U.S.C. § 80b-6.

The Advisers Act defines "investment adviser" as "any person who, for compensation, engages in the business of advising others, either directly or through publications or writings . . . as to the advisability of investing in, purchasing, or selling securities[.]" 15 U.S.C. § 80b-2(a)(11). A person who owns and manages the funds of an investment adviser company and is compensated by

10

the investment adviser company by a salary or a percentage of net profits or capital gains also is considered an investment adviser for the purposes of Section 206. See United States v. Miller, 833 F.3d 274, 282 (3d Cir. 2016); United States v. Onsa, 523 F. App'x 63, 64–65 (2d Cir. 2013) (unpublished); Goldstein v. S.E.C., 451 F.3d 873, 876 (D.C. Cir. 2006); United States v. Elliott, 62 F.3d 1304, 1310–11 (11th Cir. 1995), opinion amended by 82 F.3d 989 (11th Cir. 1996); Abrahamson v. Fleschner, 568 F.2d 862, 870–71 (2d Cir. 1977).

To prove a violation of Section 206(1) of the Advisers Act, the SEC must show that a defendant investment adviser (1) used mail or any instrumentality of interstate commerce (2) to employ a device, scheme, or artifice to defraud any client or prospective client (3) with scienter. See 15 U.S.C. § 80b-6(1); ZPR Inv. Mgmt. Inc. v. S.E.C., 861 F.3d 1239, 1247 (11th Cir. 2017); S.E.C. v. Steadman, 967 F.2d 636, 641 & n.3 (D.C. Cir. 1992); Steadman v. S.E.C., 603 F.2d 1126, 1134 (5th Cir. 1979). Recklessness is sufficient to satisfy Section 206(1)'s scienter requirement. See Malouf v. S.E.C., 933 F.3d 1248, 1263 (10th Cir. 2019), aff'd, 450 U.S. 91 (1981); ZPR Inv., 861 F.3d at 1252.[3] "The scienter of a [business entity] is established by showing that the [business entity's] officers or directors acted with scienter," and "can be established through direct or circumstantial evidence." ZPR Inv., 861 F.3d at 1252; see Thompson v. RelationServe Media, Inc., 610 F.3d 628, 635 (11th Cir. 2010).

To prove a violation of 206(2) of the Advisers Act, the SEC must show that a defendant investment adviser (1) used mail or any instrumentality of interstate commerce (2) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client. See 15 U.S.C. § 80b-6(2). Under Section 206(2), the SEC need not show that the investment adviser acted with scienter, as "[p]roof of simple negligence [will] suffice[]." Robare

---

[3] The language in Section 206(1) is "drawn from" Section 17(a)(1). Steadman, 603 F.2d at 1134. Thus, when an investment adviser violates Section 17(a)(1), the advisor typically also will violate Section 206(1). See Malouf, 933 F.3d at 1263.

11

Grp., Ltd. v. S.E.C., 922 F.3d 468, 472 (D.C. Cir. 2019); see Malouf, 933 F.3d at 1263; Steadman, 967 F.2d at 643 n.5.

The SEC argues that Peters's criminal conviction estops defendants from relitigating the facts necessary to decide count four. See [D.E. 36-1] 17–19. On June 6, 2019, a jury convicted Peters on count one of the indictment which charged violations of Sections 206(1) and (2) of the Advisers Act. See Verdict at 1, Peters, No. 5:17-CR-411 (E.D.N.C. June 6, 2019) [D.E. 99]; Superseding Indictment at 22, Peters, No. 5:17-CR-411 (E.D.N.C. Oct. 18, 2018) [D.E. 57]. In reaching its verdict, the jury determined that Peters, doing business as VQ Management and VQ Capital, knowingly used an instrumentality of interstate commerce to employ a device, scheme, or artifice to defraud VQ Management investment adviser clients and to engage in transactions, practices, or courses of business which operated as a fraud or deceit upon VQ Management investment adviser clients. See Jury Instr. at 27–34, Peters, No. 5:17-CR-411 (E.D.N.C. June 7, 2019) [D.E. 107]. The factual determinations essential to the jury's verdict on count one in Peters's criminal case replicate those required for the SEC to prevail on count four of its complaint in this action. Compare id. with [D.E. 1]; ZPR Inv., 861 F.3d at 1252; and Malouf, 933 F.3d at 1263. Again, defendants concede that Peters's criminal conviction for count one forecloses defendants from relitigating the facts necessary to deciding count four. See [D.E. 37] 1–2; Mendoza-Martinez, 372 U.S. at 157; Emich Motors Corp., 340 U.S. at 569; Jean-Baptiste, 395 F.3d at 1194; Beaty, 245 F.3d at 624; Howard, 930 F.2d at 434; Chapman, 826 F. Supp. 2d at 854. Thus, no genuine issue of material fact exists, and the SEC is entitled to judgment as a matter of law against defendants on count four. Accordingly, the court grants plaintiff's motion for summary judgment on count four.

### III.

In sum, the court GRANTS the SEC's motion for summary judgment [D.E. 36]. Defendants Peters, VQ Management, VQ Capital, and VQ Wealth are PERMANENTLY RESTRAINED AND ENJOINED from violating, directly or indirectly, Section 10(b) of the Exchange Act and Rule 10b-5,

12

by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

    (a) to employ any device, scheme, or artifice to defraud;

    (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

    (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

Defendants Peters, VQ Management, VQ Capital, and VQ Wealth are PERMANENTLY RESTRAINED AND ENJOINED from violating Section 17(a) of the Securities Act in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

    (a) to employ any device, scheme, or artifice to defraud;

    (b) to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

    (c) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

Defendants Peters, VQ Management, VQ Capital, and VQ Wealth are PERMANENTLY RESTRAINED AND ENJOINED from violating, while acting as an investment adviser, Sections 206(1) and (2) of the Advisers Act by using the mails or any means or instrumentality of interstate commerce, directly or indirectly:

    (a) to employ any device, scheme, or artifice to defraud any client or prospective client; or

    (b) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client.

Defendant Peters is PERMANENTLY RESTRAINED AND ENJOINED from directly or indirectly participating in the issuance, purchase, offer, or sale of any security, provided, however,

that such injunction shall not prevent Peters from purchasing or selling securities for his own personal account.

Defendants Peters, VQ Management, VQ Capital, and VQ Wealth are jointly and severally liable for disgorgement and prejudgment interest in the amount of $10.1 million. This obligation is satisfied by the restitution ordered in the amended judgment in Peters, which ordered Peters to pay restitution of $15,161,624. See Am. Judgment, Peters, No. 5:17-CR-411 (E.D.N.C. Nov. 19, 2019) [D.E. 214]; S.E.C. v. Fischbach Corp., 133 F.3d 170, 175 (2d Cir. 1997).

As provided in Federal Rule of Civil Procedure 65(d)(2), this order also binds the following who receive actual notice of this judgment by personal service or otherwise:

(a) defendants' officers, agents, servants, employees, and attorneys; and

(b) other persons in active concert or participation with defendants.

The clerk is DIRECTED to enter this final judgment against defendants Peters, VQ Management, VQ Capital, and VQ Wealth. This court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this final judgment.

SO ORDERED. This 22 day of March 2021.

JAMES C. DEVER III
United States District Judge

14

Case 5:17-cv-00630-D   Document 39   Filed 03/22/21   Page 14 of 14